**Masako TERPAK, Appellant,**

v.

**John B. TERPAK, Jr., Appellee.**

Superior Court of Pennsylvania.

Argued April 16, 1997.

Filed July 16, 1997.

POPOVICH, Judge.:

On appeal, the appellant, Masako Terpak, claims the trial court abused its discretion in awarding spousal support below that recommended under Pennsylvania's Uniform Support Guidelines. We reverse.

The record discloses the appellant met the appellee, John B. Terpak, Jr., while he was on military duty in Japan in 1964. The parties married in 1969 and two children were born of the marriage, both of whom are emancipated. Once the appellee retired

from the military in 1980, the couple moved to York, Pennsylvania. The appellee secured a job with York Barbell Corporation, a business in which his father was a stockholder. When the parties separated in 1995, the appellee had risen to the level of executive vice-president, owned 50% of the corporation's stock (given to him by his father) and received an annual salary of $100,000.

The appellant filed a complaint in January of 1996 claiming the appellee had deserted the marriage and neglected to provide for her support. With the parties' failure to reach an agreement, a Domestic Relations Officer (DRO) directed the appellee to pay $2,274 plus $25 for arrears per month. The appellant filed an appeal demanding a hearing de novo on grounds the DRO erred in offsetting the appellee's support obligation by a monthly payment ($620) on an irrevocable life insurance trust for the children, and the DRO erred in failing to determine the appellee's dividend and interest income for 1995.

A hearing was held on June 10, 1996, after which the court awarded the appellant $3,500 in support. This figure was below the $5,202 assessed under the Uniform Support Guidelines. This ensuing appeal challenges the court's order as an abuse of discretion.

In *Ball v. Minnick*, 538 Pa. 441, 648 A.2d 1192 (1994), the trial court ordered the father to pay $113 less in child support than indicated by the Uniform Support Guidelines because the child did not need the money. The mother's appeal resulted in a remand for the imposition of an award consistent with the appropriate guideline figure. In doing so, our Supreme Court held in relevant part:

Rule 1910.16–1 explicitly states that the amount of support, whether it be child support, spousal support or alimony pendente lite, shall be determined in accordance with the support guidelines which consist of not only the grids set forth in Rule 1910.16–2 and the formula set forth in Rule 1910.16–3, but also Rule 1910.16–5 which discusses in detail the operation of the guidelines. The rules make clear that the amount of support as determined from the support guidelines is presumed to be the appropriate amount of support and

that any deviation must be based on Rule 1910.16–4.

* * * *

*The presumption is strong that the appropriate amount of support in each case is the amount determined from the support guidelines. * * * Deviations will be permitted only where special needs and/or circumstances are present such as to render an award in the amount of the guideline figure unjust or inappropriate.*

* * * *

The support guidelines were promulgated pursuant to the Act of October 30, 1958, as amended, 23 Pa.C.S. § 4322, which provides that child and spousal support shall be awarded pursuant to statewide guidelines as established by general rule by the Supreme Court of Pennsylvania. The legislation provides that:

[t]he guideline[s] shall be based upon the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support. In determining the reasonable needs of the child or spouse seeking support and the ability of the obligor to provide support, the guideline[s] shall place primary emphasis on the net income and earning capacities of the parties, with allowable deviations for unusual needs, extraordinary expenses and other factors, such as the parties' assets, as warrant special attention.

... the trier of fact need not, nor should he or she, consider in the first instance, the actual expenses of the parties in an effort to establish the reasonable needs of a particular child [or spouse]. Instead, the trier of fact must assume initially that the guideline amount constitutes the amount necessary to meet the reasonable needs of the child [or spouse].

Under Rule 1910.16–4, a court may not deviate from the guidelines on the ground that the child [or spouse] does not need this amount of money. This is not a factor that is set forth in Rule 1910.16–4(b). While subsection (7) of that Rule which

references the standard of living of the parties might seem at first blush to support the trial court's reasoning, we find that given the premises on which the guidelines are based, subsection (7) was not intended to justify the downward modification of the guideline figures absent a showing of special needs and/or circumstances. Again, the purpose of the support guidelines is to make available for the children's [or spouse's] reasonable needs the full amount of the guideline figure unless unusual obligations of the obligor limit his or her ability to pay the guideline amount.

Since the trial court considered a factor that should not have been considered in entering the support award here, an abuse of discretion is readily apparent. Moreover, as there were no additional relevant factors which would support the trial court's award, application of the above principles dictates that an award in the amount of the appropriate guideline figure should have been awarded.

538 Pa. at 448, 450–452, 648 A.2d at 1197–1198 (Emphasis added).

■ Here, as in *Ball v. Minnick,* supra, we must decide whether the downward modification of the guideline figure was buttressed by "a showing of special needs and/or circumstances" as outlined by Rule 1910.16–4(a) & (b), which provides:

(a) If the amount of support deviates from the amount of support determined by the guidelines, the trier of fact shall specify, in writing, the guideline amount of support, and the reasons for, and findings of fact justifying, the amount of the deviation.

(b) In deciding whether to deviate from the amount of support determined by the guidelines, the trier of fact shall consider

(1) unusual needs and unusual fixed obligations;

(2) other support obligations of the parties;

(3) other income in the household;

(4) ages of the children;

(5) asset of the parties;

(6) medical expenses not covered by insurance;

(7) standard of living of the parties and their children; and

(8) other relevant and appropriate factors, including the best interests of the child or children.

At bar, the trial court premised its reduction of the guideline figure of $5,202 to $3,500 per month upon its finding that the appellee was paying monthly premiums ($1,350) on an irrevocable life insurance trust established for the parties' two emancipated children, the appellant's retention of the marital residence at essentially no cost or expense, and the parties' prior standard of living.[1] See Trial Court Opinion, 8/5/96 at 8.

In [reviewing] guideline cases, we first look to determine if the court correctly computed the parties' incomes. We must next determine if the correct guideline amount was selected. Also, in cases where a trial court is asked to consider[ ] a departure from the guidelines based upon the unique needs of either the child or the obligor parent, we must examine the court's reasons for ordering departure or for refusing to take such action.

*Young v. Muthersbaugh,* 415 Pa.Super. 591, 609 A.2d 1381, 1382 (1992).

In computing incomes, the parties agreed the appellant had no earning capacity[2] and the appellee was listed as having the following assets:

| | | |
|---|---|---|
| 1. | Military Pension, per year | $ 23,000 |
| 2. | Blue Rock Mountain, Inc., per year | 185,000 |
| 3. | Interest and Dividends, per year | 6,500 |
| 4. | Rental Income, per year | 5,000 |

**1.** To the extent that the appellee adds to the *reasons* why the court's downward reduction in support should be affirmed, the absence of the same from the *court's* repertoire of reasons for its actions renders an examination of the *appellee's* additional reasons inappropriate. *Young v. Muthersbaugh,* 415 Pa.Super. 591, 609 A.2d 1381, 1382 (1992)(In a case in which the trial court has departed from the guidelines, appellate court must examine the *trial court's reasons* for ordering a departure).

**2.** It was stipulated between the parties that the 62–year–old appellant was not self-supporting. N.T. 51.

5. J.B.T. Enterprises, per year     5,200
6. Hoffman Foundation, per year     18,000

Total Annual Gross Income     $242,700

The court determined the appellee's net monthly income to be $13,197 and the appellant's monthly net interest income was $192. Neither party disputes these figures, which were taken by the court and placed into the Support Guidelines Formula at Pa.R.Civ.P. 1910.16–3(a)(Support Guideline Computation—Spousal Support: *Without Dependent Children* ). The calculation resulted in a monthly support figure of $5,202.[3] Nonetheless, the court concluded three factors weighed in favor of reducing the amount of spousal support payable to the appellant.

■ First, the court considered the appellee's payment of a monthly premium ($1,350) to maintain an irrevocable life insurance trust for his emancipated children. We hold the *voluntary* incurrence of a debt does not reduce the appellee's obligation to his spouse, especially with its conspicuous absence from the criteria set forth in Pa.R.Civ. P.1910.16–4(b) in deciding whether to deviate from the amount of support.[4] Cf. *Coffey v. Coffey,* 394 Pa.Super. 194, 575 A.2d 587, 590 (1990)(Husband may not deduct the cost of social, political or charitable expenses to create or perpetuate existing or prospective clients to reduce his spousal or child support payments, even though monies automatically deducted from pay to preserve his position with the firm).

3. The court looked to Pa.R.Civ.P.1910.16–3(a), which provides the following formula to calculate spousal support without dependent children:

| | |
|---|---|
| Obligor's Monthly Net Income | $13,197.42 |
| Less obligee's Monthly Income | − 191.67 |
| Difference | $13,005.75 |
| Multiply by 40% | × .40 |
| Amount of Monthly Spousal Support | $ 5,202.30 |

The appellee's reference in page 3 of his appellate brief that the guideline minimum amount should instead read $3,923 per month ($10,000 - $191 x 40% = $3,923) is specious. The fatal flaw in his logic is that he relies upon Pa.R.Civ.P. 1910.16–5(a), which uses the $10,000 income figure *only* where the combined income of both parties exceeds $10,000 in determining the presumptive minimum amount of support for *children*. *Gowdy v. Kesselring,* 455 Pa.Super. 57, 686 A.2d 1343, 1345 (1996).

Secondly, the court found the appellant's retention of the marital residence, in the absence of expending monies for its maintenance, a reason to lower support payments. Lastly, the court looked at the parties' standard of living as justifying a reduction in support.

In this Commonwealth, the courts have held repeatedly that a family member will not be denied support commensurate with his or her reasonable needs *when viewed in terms of that person's prosperous spouse's or parent's income and standard of living.* *Gowdy v. Kesselring,* 455 Pa.Super. 57, 686 A.2d 1343, 1346 (1996). Here, both parties described their standard of living during the marriage as "upper middle class". N.T. 54, 81. While employed at York Barbell, the appellee was paid $60,000 annually until mid–1993. Thereafter, the appellee's salary was $100,000 per year until retirement in December of 1995. Upon retirement, the appellee's stock in York Barbell was purchased by the corporation and secured by a $1,050,000 note.

Moreover, the appellee inherited a condominium in Florida valued at $300,000, one-half of which is his sister's. The parties dined out once a week, vacationed in Florida, Washington and Japan. Each owned a vehicle: Toyota Corolla (appellant); 1995 Mercedes Benz (appellee). And, with the appellee's financial status, the appellant "never wanted for anything" during her 27–year marriage.

Here, the parties' children are emancipated and only spousal support is sought. This discounts the use of Pa.R.Civ.P. 1910.16–5(a)'s formula to equate the amount of spousal support. Pa.R.Civ.P. 1910.16–3(a)'s formula for "Spousal Support—Without Dependent Children" was utilized correctly by the court here to determine the presumptive minimum amount of spousal support, but it erred in reducing the figure obtained.

4. If the parties wish to perpetuate the Irrevocable Life Insurance Trust, each parent may contribute toward the maintenance of such a gratuitous benefit for their children. However, it is not a deduction ("factor") contemplated by Pa. R.Civ.P.1910.16–4(b)(1), (8) in calculating spousal support.

Accordingly, in light of both the applicable law and the facts of record, we are convinced that the court's order of support is inappropriate. The presumptive minimum amount under the Uniform Support Guidelines ($5,202) has not been rebutted by the presentment of "unusual needs or extraordinary expenses" of the appellee such as to warrant a reduction in the guideline figure. *Ball v. Minnick,* supra; *Gowdy v. Kesselring,* supra; *Young v. Muthersbaugh,* supra. As a result, the guideline figure of $5,202 should not have been reduced to $3,500. On remand, the court shall rectify this error.

Order reversed and case remanded for compliance with this opinion. Jurisdiction relinquished.

