686 A.2d 1325

**Amy Susan Nislow KARP, Appellee**

v.

**Michael Allen KARP, Appellant: (at 1906)**

**Amy Susan Nislow KARP (at 2115) Appellant**

v.

**Michael Allen KARP, Appellee.**

Superior Court of Pennsylvania.

Argued Nov. 21, 1996.

Filed Dec. 27, 1996.

Theodore R. Mann, Philadelphia, for Michael Karp.

Mark R. Ashton, West Chester, for Amy Karp.

Before McEWEN, President Judge, and POPOVICH and MONTEMURO*, JJ.

MONTEMURO, Judge.

This case presents cross-appeals from an order on remand awarding Appellee/cross Appellant Amy Karp $45,670 per month unallocated, tax free alimony pendente lite and child support for the maintenance of herself and the parties' four children.

The parties were married in January of 1983, when Appellee was a 20 year-old university student, and Appellant at age 39, was already a successful businessman with a net income in the range of $2 to $4 million per year. His income has since increased significantly, so that counsel was willing to stipulate Appellant's yearly net earnings at something over $5 million.

The marriage ended in 1990, after the parties had produced four children and moved from a townhouse apartment in Philadelphia to an estate in the suburbs. A temporary support order was entered in February of 1990, and reaffirmed in July. After a Master's hearing, Appellee was awarded $33,000 per month unallocated child support and APL, as well as $3,000 per month arrearages. The trial court confirmed this order, and Appellant filed exceptions, pursuant to which six days of de novo hearings were held. Following the testimony, an order was entered awarding Appellee $45,068 per month combined APL and child support as well as $5,000 per month arrearages. An appeal was taken to this court.

We found that the trial court's opinion failed to supply the analysis required by *Melzer v. Witsberger*, 505 Pa. 462, 480 A.2d 991 (1984), and offered no specific findings as to the factors it considered in determining the APL amount. We therefore remanded so that these omissions could be corrected. The trial court filed two opinions supplementing its earlier decision, and entered the order from which this appeal is taken, awarding the same amount as the previous order, and making the award retroactive to the filing of the divorce

* Retired Justice assigned to the Superior Court.

complaint/support petition on Jan. 22, 1990. It should be noted that in addition to the monthly APL and child support, Appellant also makes direct disbursements for private school tuition and uniforms, music and other lessons, summer camps, religious memberships and instruction for the children, as well as medical and dental insurance for Appellee and the children, and all unreimbursed medical costs. There is not now, nor has there ever been, any question as to Appellant's ability to pay.

Appellant ostensibly presents five issues. The main thrust of these is that the support award is too high, unsupported by sufficient findings of fact, i.e., inconsistent with how the parties lived preseparation, and diametrically opposed to what he describes as the values he wishes to instill in his children. Moreover, Appellant requests that if the case is remanded for further findings, as he believes is necessary, a new judge be assigned. As two of his claims on appeal, Appellant also insists that he owes no arrearages for the period during which the parties were separated but living in the same house. In response, Appellee cross-appeals on the basis that the trial court's award of $5,000 per month arrearages is too little to reimburse the amount owed within a reasonable time. We will address all of these matters, although not necessarily in the order presented.

Where the combined incomes of the parties exceeds the outer limits of the guidelines grid, the formula enunciated in *Melzer, supra,* is to be applied by the trial court in fashioning its award. Pa.R.C.P.1910.16–5(d); *Branch v. Jackson,* 427 Pa.Super. 417, 629 A.2d 170 (1993). Our scope of review with respect to assessing the propriety of support awards is a narrow one: the amount of support awarded is largely within the sound discretion of the trial court whose decision will not be disturbed absent a clear abuse of that discretion. *Melzer,* 505 Pa. at 475, n. 8, 480 A.2d at 997 n. 8. Appellate review of an APL award is similarly gauged by an abuse of discretion standard. *Jayne v. Jayne,* 443 Pa.Super. 664, 663 A.2d 169 (1995).

Appellant advances a multipartite claim that the trial court, in reinstating the previous support order in the amount of $45,670 per month, erred because it failed to base its award on the children's reasonable needs; failed to base the APL award on the parties' preseparation standard of living; based the award exclusively on Appellant's income; and violated *Melzer* by requiring Appellant to pay for "extras" of which he does not approve. In this issue and the next, Appellant argues that the trial court failed to provide reviewable findings to support its decisions.

We first note, germane to all of these claims, that the trial court found Appellant's testimony on the costs of his children's reasonable needs and on the parties' standard of living to be incredible, due largely to his ignorance of household expenses rather than out of a desire to mislead. Appellant's testimony on some of the details of such spending, e.g., the clothing expenses of the children and of Appellee, are, as the trial court notes, very good examples of his lack of reliable information. We doubt that when taken to meet the President of the United States, as Appellant arranged for his children to do, they were at the same time required to wear the $5 tee shirts he insists constitute their wardrobes.

However, part of Appellant's position on the standard of living issue proceeds from a professed desire to instill principles of public service, thrift, and egalitarianism in his children.[1] Again, as the trial court correctly points out, such values, while laudable, are taught by the parents, not the objects which compose a child's surroundings. That Appellant has not grasped this distinction is apparent, among other things, from his denial that his property is an estate or his house a mansion. However, a 20-room dwelling on 11 acres of landscaped property in an exclusive neighborhood remains an estate regardless of the age of the appliances or the inelegance of the furniture. Insisting that his home is merely a house in the suburbs, modestly appointed, and lacking recent

1. It occurs to us to wonder what "values" the children derive from Appellant's constant litigation over money.

renovation, does not transform it into a three bedroom split level on a half-acre plot in a subdivision, nor should it.

 This court has stated over and over that the purpose of a support order, such as that under review, is "to secure such an allowance to wife and child as is reasonable, having in mind the husband's property and earning capacity and the station in life the parties." *Commonwealth ex re Kallen v. Kallen,* 200 Pa.Super. 507, 508–9, 190 A.2d 175, 176 (1963). Moreover, "a wealthy father has the legal duty to give his children the 'advantages' which his financial status indicates to be reasonable." *Branch,* 427 Pa.Super. at 420, 629 A.2d at 171. (quoting *Hecht v. Hecht,* 189 Pa.Super. 276, 150 A.2d 139 (1959)). Most pertinently, this court has observed that

> The cases which support the proposition that the standard of living after separation, if possible, should reflect the conditions existing before separation, turn on the available income and lifestyle that income would support. To live during the marriage in a fashion dedicated to reducing expenditures and accumulating wealth, thereby living far below the standard one would expect of persons in that position, cannot be a basis for depressing the living standard of the wife, while permitting the husband to continue to amass large financial assets after separation. The standard of living to which she is entitled is one reasonably supportable by the income and station in life of the parties, irrespective of the frugal inclinations of the husband.

*Edelstein v. Edelstein,* 399 Pa.Super. 536, 542, 582 A.2d 1074, 1077 (1990).

 Thus, the critical factor in determining standard of living is clearly the financial circumstances of the obligee, not his philosophical position on the precise limits of the good life—what he can afford is the question, not what he is willing to pay for. In fashioning its award, the trial court attempted to achieve the correct balance between reasonableness, no mean task given that limits are conspicuously lacking, and propriety.

■ With respect to the children's reasonable needs, the trial court adopted the figure of $23,266, the amount shown on Appellee's child support budget to cover household expenses. Each of the items represented was shown as a monthly cost multiplied by the portion attributable to the children. Appellant makes no claim that the amounts are inaccurate or the items themselves unnecessary, only that they are ostentatious and unexplained. Nor does he identify the "extras" to which he takes exception. We therefore know from the budget precisely what constitutes the children's needs and their cost, and now have before us that figure used in application of the *Melzer* formula. We have no countervailing information from Appellant. Thus we find this assignment of error meritless.

■ As to the amount of APL awarded to Appellee, Appellant portrays a preseparation standard of living characterized by frugality and prudence. As the trial court correctly noted, Appellant's notion of appropriateness is not necessarily controlling given his resources: the standard is what is reasonable under the circumstances, and the circumstances are in large measure governed by disposable income. Moreover, Appellant's description clashes with the reality of amounts spent on, e.g., household help, certain vacations, a limousine, and other amenities inconsistent with thrift. The inescapable conclusion here is that in Appellant's estimation, expenditures of thousands of dollars for carousel horses or statuary on a whim pose no threat to the children's characters; only when the court formally recognizes that such purchases are normal for this family can harm be done.

Nevertheless, the trial court specifically excluded from its APL award certain payments, e.g., Appellee's bi-weekly therapist, a shore home, and expenditures on flowers and furniture, which it deemed unallowably extravagant. These decisions were within the trial court's discretion, and Appellant has provided no basis for our intervention on the unallocated support award, which as the trial court points out, constitutes less than 11% of Appellant's annual income.

Two of Appellant's issues are reiterations of the same claim concerning the period during which the parties, although separated, resided in the same house.[2] In these issues Appellant contends that the award should not have been made retroactive to the filing of the divorce complaint, since for eighteen months thereafter, while Appellee and the children lived in the same house with him, they were adequately supported. He then asserts that contrary to this court's instructions, the trial court failed to explain why the order was made retroactive. Pa.R.C.P.1910.17(a) states: "An order of support *shall* be effective from the date of the filing of the complaint unless the order specifies otherwise." (emphasis added)

In *Sutliff v. Sutliff,* 339 Pa.Super. 523, 556, 489 A.2d 764, 781 (1985), *aff'd,* 515 Pa. 393, 528 A.2d 1318 (1987), the Court observed that there is a sound policy of favoring retroactivity in most cases. Further, failure to make an award retroactive is reversible error unless specific and appropriate justification for such a ruling is shown. *Shovlin v. Shovlin,* 318 Pa.Super. 516, 465 A.2d 673 (1983).

Appellant argues that since Appellee has made no claim that she and the children were not fully supported during the eighteen months of separation that the parties lived in the house, this court should presume that such was the case. However, Appellant, not Appellee, bears the burden of proof to rebut the presumption of retroactivity. *Crawford v. Crawford,* 429 Pa.Super. 540, 633 A.2d 155 (1993). Where courts have found retroactivity unnecessary, there was evidence presented of the amounts paid directly. *See, e.g., Hainaut v. Hainaut,* 410 Pa.Super. 316, 599 A.2d 1009 (1991). Here, no such evidence was proffered. Moreover, as the trial court notes, had Appellant supplied information to support his claim of having fulfilled his duty of support, he could have petitioned to be credited for these amounts. *See Bradley v. Bradley,* 387 Pa.Super. 503, 564 A.2d 504 (1989). Having failed to request specific relief or to advance evidence but-

---

2. These issues are treated as one for purposes of the argument section of Appellant's Brief.

tressing his claim, Appellant will not now be heard to complain.

On cross-appeal, Appellee argues that at the rate awarded by the trial court, it will take 26 years for the arrearages due on the support payments to be paid off. She claims that given Appellant's enormous reserves of cash, a lump sum payment of the full amount would not be confiscatory, and would allow her to cover what she describes as a compelling need.

As part of the support order, the award of arrearages is governed by the same abuse of discretion standard, and we have found no such abuse in the trial court's order. The need of which Appellee speaks, presumably her massive debts for legal services can be addressed by a petition for specific reimbursement at the time of equitable distribution, as the support amount is adequate.

Order affirmed.[3]

---

3. Appellant's final issue concerns the reassignment of this case to another judge on remand. In view of our disposition of the issues raised, remand will not be necessary. Further, as this court stated in the previous appeal, unfavorable rulings do not, by themselves, provide grounds for reassignment, and Appellant's allegations of error do not warrant disqualification. (Memorandum at 5, No. 2618 PHL 1995, filed May 13, 1996).